UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RICKY A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:17CV46-PPS |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner | ) | |
| of the Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Ricky A. Johnson is a 57-year-old man who left school in the eighth grade and has worked as a construction laborer and a factory machine operator. [AR at 183, 176, 197.][2] He stopped working on November 27, 2012, just prior to a second surgery on his cervical spine. [AR at 176, 182.] He had also previously had a surgery on his lumbar spine in 2007. [AR at 54.] Citing pain in his back and neck, and difficulty lifting and gripping, Johnson applied for Social Security disability benefits. [AR at 190, 54.]

Johnson had a hearing before a Social Security administrative law judge on July 9, 2015, at which Johnson appeared and gave testimony. [AR at 36-72.] The ALJ issued

---

[1] On January 23, 2017, Nancy Berryhill became the Acting Commissioner of Social Security. Fed.R.Civ.P. 25(d) provides for Berryhill's automatic substitution in place of her predecessor, Carolyn Colvin.

[2] The administrative record [AR] is found in the court record at docket entry 10, and consists of 1074 pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

a written decision denying Johnson's claim for benefits on July 23, 2015. [AR 20-35.] The ALJ found that Johnson has severe impairments of degenerative disc disease of the lumbar and cervical spines, status post lumbar fusion and cervical fusion, arthritis of the left acromioclavicular joint, depression and anxiety. [AR at 22.] The ALJ concluded that Johnson's severe impairments do not conclusively establish disability by meeting or medically equaling the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [*Id. at 23.*] The ALJ also found that Johnson possessed the residual functional capacity to perform light work with limitations, that he was capable of performing jobs that exist in significant numbers in the national economy, and that Johnson is not disabled. [AR at 25, 34, 35.] The Social Security Administration's Appeals Council denied Johnson's request for further review. [AR at 1.] This case is Johnson's appeal from the denial of disability insurance benefits.

**Standard of Review**

Johnson asks me to reverse the ALJ's decision or remand the case for further proceedings by the Social Security Administration. My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I cannot reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the

evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "In rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

**Medical Opinion Evidence**

Johnson's first challenge to the ALJ's decision is that his treatment of various medical opinion evidence was faulty. Medical opinions are considered by the ALJ in formulating a claimant's residual functional capacity. RFC is the disability term for the description of what a claimant is able to do despite functional limitations from medical impairments, and represents the Commissioner's determination of the individual's "capacity to perform work-related physical and mental activities." POMS DI 24510.001(A)(1).

In this case, the ALJ found that Johnson had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except than he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. He can do no more than occasional head turning or looking up or down. He can perform frequent fingering and feeling bilaterally, but have no exposure to hazards such as wet, uneven terrain or unprotected heights. Due to moderate limitations in social functioning, the claimant is limited to frequent interaction with coworkers and the general public and only occasional interaction with supervisors.

[AR at 25.]

Under §404.1567(b):

3

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

By its silence on certain capabilities, the ALJ's RFC suggests no limits on Johnson's ability to sit, walk or stand, and an ability to frequently lift or carry 10 pounds, and to lift up to 20 pounds. In rendering this RFC opinion, the ALJ gave great weight to (that is, agreed with and adopted) the conclusions of state agency medical consultant Dr. J. Sands, who completed an RFC assessment on June 17, 2013. [AR at 31-32, 78-80.] The ALJ offers no explanation for favoring Dr. Sands' opinion over that of other doctors with differing opinions about Johnson's capabilities.

The ALJ had the benefit of a number of medical opinions in arriving at his RFC assessment. One of Johnson's treating physicians is Dr. Julian Ungar-Sargon, a neurologist and specialist in pain management. Dr. Ungar-Sargon provided a Medical Source Statement in which he offered his opinions about Johnson's work-related limitations. Dr. Ungar-Sargon concluded that Johnson could only rarely lift or carry up to 10 pounds, and could never lift or carry more, based on severe carpal tunnel syndrome as shown on EMG. [AR at 996.] Due to chronic lumbar spine issues shown on EMG, Dr. Ungar-Sargon opined that Johnson could sit 2 hours at a time and a total of 3 hours in an 8-hour work day, and that Johnson could stand or walk for an hour at a time and a total of 2 hours in an 8-hour work day. [AR at 997.] Dr. Ungar-Sargon said that Johnson could rarely reach overhead and otherwise could never reach, handle,

4

finger, feel, push or pull, and that he could only rarely operate foot controls. [AR at 998, 999.]

"A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and is consistent with other evidence in the record." *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018), citing 20 C.F.R. §404.1527(c)(1). Where an ALJ does not give a treating doctor's opinion controlling weight, he must base the weight afforded on regulatory factors including "the treatment relationship's length, nature, and extent; the opinion's consistency with other evidence; the explanatory support for the opinion; and any specialty of the treating physician." *Gerstner*, 879 F.3d at 263. When the ALJ declines to give a treating doctor's opinion controlling weight, he must articulate "good reasons" for doing so. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). The ALJ did not give Dr. Ungar-Sargon's assessment "controlling weight or even great weight." [AR at 32.]

Here the ALJ's explanation for the lesser weight given Dr. Ungar-Sargon's assessment includes the fact that his treatment relationship with Johnson was only 3 months long. [AR at 32.] Nonetheless, Dr. Ungar-Sargon was the *only* treater from whom the ALJ had this kind of RFC assessment opinion, and the ALJ had expressly discounted two other medical opinions on the ground that they were *not* from doctors who had treated Johnson. [AR at 29, 31.] In his discussion of the weight of Dr. Ungar-Sargon's opinion, the ALJ does not expressly acknowledge that the doctor is a specialist (neurology and pain management), which tends to increase the weight to be given his

5

conclusions. 20 C.F.R. §416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.")

Based on his knowledge of Johnson's history, test results and current condition, Dr. Ungar-Sargon was willing to opine "within a reasonable degree of medical probability as to past limitations" that Johnson's functional limitations were present as of November 27, 2012. [AR at 1002.] The ALJ is critical of Dr. Ungar-Sargon's lack of "firsthand knowledge of the claimant's functional abilities dating back to the alleged onset date." [AR at 32.] As Johnson points out, however:

> It is well-settled that the "treating physician rule" applies to retrospective diagnoses, those relating to some prior time period during which the diagnosing physician may or may not have been a treating source, as well as to contemporaneous ones....This means that a retrospective diagnosis by a treating physician is entitled to controlling weight unless it is contradicted by other medical evidence or "overwhelmingly compelling" non-medical evidence.

*Martinez v. Massanari*, 242 F.Supp.2d 372, 377 (S.D.N.Y. 2003) (internal citations omitted). The Seventh Circuit has held: "There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984). The ALJ identifies no medical or other evidence to suggest that Johnson's medical condition or its limiting effects were different in 2015 than they had been as of his claimed onset date of November 27, 2012.

6

The ALJ's justification for discounting Dr. Ungar-Sargon's opinion concludes with his assertion that "the overall evidence, including Dr. Ungar-Sargon's own treatment records, does not support such restrictive limitations." [AR at 32.] The sweeping allusion to the "overall evidence" is not further explained, and no contrary evidence is identified or cited. As to the doctor's own records, the ALJ points to tests ordered by Dr. Ungar-Sargon, suggesting that although the results "showed some abnormalities, they were only moderately abnormal." [*Id.*] The ALJ cannot persuasively pitch his own (unexplained) interpretation of "moderately abnormal" test results against those of a medical specialist who cited test results in giving opinions about a patient's limitations. ALJs must "rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). *See also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (rejecting ALJ's interpretation of MRI results).

I conclude that the ALJ failed to provide the necessary "good reasons" for discounting Dr. Ungar-Sargon's opinions about Johnson's functional capacities. *Brown*, 845 F.3d at 252. The ALJ's proffered explanation does not demonstrate that Dr. Ungar-Sargon's assessments were not "well supported by medical findings" or were "inconsistent with other substantial evidence in the record." *Id*.

Johnson also challenges the ALJ's discounting of the opinion of consultative examiner Dr. Gregory French. Dr. French's opinion was that Johnson had no limitations sitting, walking or standing, as the ALJ found. Dr. French's opinion was also that

7

Johnson could only lift or carry less than 10 pounds, which the ALJ disagreed with. Now Johnson faults the ALJ for disagreeing with that aspect of Dr. French's assessment. Dr. French is one of the physicians whom the ALJ discounted because he was merely "an examining source as opposed to a treating source." [AR at 29.] The vacuity of this reasoning is demonstrated by the fact that the ALJ discounted the only treating medical source, but gave great weight to a medical source who did not treat OR examine Johnson, but only reviewed the file (Dr. Sands).

Again the ALJ refers to the "overall evidence," this time citing Johnson's successful recovery from lumbar surgery and "some improvement" after his second neck surgery. [AR at 29.] What those circumstances have to do with the ability to lift and carry is unclear. Dr. French had himself found Johnson's bilateral upper extremity fine motor abilities diminished as well as the strength of Johnson's hands. [AR at 353.] To say that the "overall evidence does not support such a restrictive limitation regarding lifting and carrying" is to overlook entirely the contrary opinion of the one treating physician in the file, Dr. Ungar-Sargon, and the medical evidence (test results) supporting it. [*Id*.] Other medical evidence is also consistent with Dr. French's conclusion about Johnson's ability to lift and carry. Johnson's primary care physician, Dr. Hoff, noted in March 2013 that Johnson suffered from paresthesias of the fourth and fifth fingers on both hands. [AR at 356.] And the ALJ himself notes "the presence of some hand numbness" even after the final spinal surgery. [AR at 29, 326.] For these

8

reasons, the ALJ's weighing of Dr. French's opinion is not well supported by the explanation he offers.

The ALJ found Johnson to have severe impairments of depression and anxiety. [AR at 22.] In determining RFC limitations relative to these conditions, the ALJ had before him the opinions of two psychologists who examined Johnson in June 2015, Anthony Conger, Ph.D. and Judith Dygdon, Ph.D. [AR Exh. 15F.] The evaluation performed by Dr. Conger and Dr. Dygdon was undertaken at the request of Johnson's attorney for purposes of his disability application. [AR at 1034.] It involved the doctors' review of Johnson's medical records, an interview with Johnson, and the administration of a battery of tests of behavioral, cognitive and personality functioning. [AR at 1033.] Dr. Conger and Dr. Dygdon produced a detailed 16-page report [AR at 1033-1048], and completed the Social Security Administration's form "Psychiatric Review Technique," in which they presented their opinion that Johnson's impairments met Listings 12.04 (for depressive, bipolar and related disorders) and 12.06 (for anxiety and obsessive-compulsive disorders). [AR at 1050.] For each category of functional limitation known as the "B" criteria, Dr. Conger and Dr. Dygdon found Johnson to have higher degree of limitation than the ALJ ultimately concluded. [AR at 1053.] The ALJ gave "little weight" to the findings of Dr. Conger and Dr. Dygdon. [AR at 31.]

Johnson challenges the ALJ's reasons for discounting Dr. Conger and Dr. Dygdon's conclusions. The ALJ cites the fact that they were not a "treating source" but only an "examining source" who saw Johnson on one occasion. [AR at 31.] Again, this

9

reliance on the hierarchy of opinion evidence rings false when the ALJ gave the greatest weight to the state agency consultant, Dr. Sands, who neither treated nor examined Johnson. Without further explanation, the ALJ dismisses Dr. Conger and Dr. Dygdon's report on the grounds that "the findings in their own exam" and "the totality of the evidence" do not support their opinions. [AR at 31.] These conclusory justifications that fail to identify and explain the contradictory evidence are an inadequate basis for the ALJ's discounting the doctors' conclusions. Finally, the ALJ refers to Johnson's relative lack of mental health treatment. [AR at 31.] But he did so without "considering possible reasons (the claimant)...may not comply with treatment or seek treatment consistent with the degree of his or her complaints," as required by Social Security Ruling 16-3p. *See also Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). For all these reasons, the ALJ's discounting of Dr. Conger and Dr. Dygdon's opinions lacks both substantial evidence and adequate explanation.

The Commissioner's support of the ALJ's decision provides no argument for the sufficiency of the ALJ's treatment of these various medical opinions. [AR 15 at 3-5.] Instead, the brief merely recaps what the ALJ said about each opinion, without responding to Johnson's arguments or offering any discussion of why the ALJ's analysis was adequate. [*Id.*] I clearly don't find the sufficiency of the ALJ's handling of the medical source opinions to be self-evident, as the Commissioner's response suggests. Instead, I conclude that a lack of substantial evidence and explanation for the weight

given to each of the four opinions requires a remand for further consideration of those opinions and their impact on the RFC assessment.

**<u>Credibility of Johnson's Statements about his Subjective Symptoms</u>**

Next Johnson argues that the ALJ's reasons for not fully accepting Johnson's statements about his symptoms are "legally insufficient and unsupported by the record." [[DE 15 at 19.] Finding Johnson's statements "not fully credible," the ALJ cited "medical records that show only improvement of his symptoms after his surgeries and that his chronic neck and back pain is well-controlled and stable with medication." [AR at 33.] Because the case is being remanded on the grounds previously discussed for further consideration of Johnson's RFC, the Commissioner will have a new opportunity to evaluate the credibility of Johnson's claims about his symptoms.

Furthermore, the reevaluation can take into account the additional medical evidence submitted at the Appeals Council level that was too late to be considered by the ALJ. [AR at 272, 2.] This evidence, not included in the record before me, is described as the report from an EMG done on October 19, 2015 plus additional records from treating physician Dr. Ungar-Sargon that Johnson contends support his subjective complaints. [*Id.*] This evidence may be pertinent to a reconsideration of the ALJ's conclusion that Johnson's statements about the intensity, persistence and limiting effects of his symptoms were not entirely credible because the "totality of the evidence" did not fully support them. [AR at 26.]

11

**Johnson's Non-Severe Impairments and Sustainability**

Next Johnson challenges the ALJ's analysis of his COPD and hypothyroidism, which the ALJ identified as non-severe impairments. [DE 15 at 20; AR at 23.] It is true that in making an RFC assessment, the Commissioner is required to consider the combined effect of all impairments, both severe and non-severe. Social Security Ruling 96-8p; *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). In determining that these two conditions have "no more than a minimal impact on the claimant's ability to perform basic work activities," the ALJ cited medical records for his conclusion that both the COPD and hypothyroidism are stable with Johnson's treatment. [AR at 23.] He found that the COPD caused "only intermittent complaints of shortness of breath and wheezing" and that x-rays showed no active disease. [*Id*.] The ALJ cited labwork showing Johnson's thyroid function within normal limits. [*Id*.] Johnson does not dispute these observations and conclusion, but argues that the ALJ erred by failing to consider whether these non-severe conditions, singly or in combination with his other impairments, warranted additional limitations in the RFC.

The argument is made without citations to evidence of record. The plaintiff offers no support for his suggestion that "potential environmental limitations" were warranted due to Johnson's COPD or that additional psychosocial limitations needed to be considered based on nothing more than Johnson's brief testimony linking agitation and tears to hyperthyroidism. [DE 15 at 21.] This "perfunctory and undeveloped argument...unsupported by pertinent authority" is entirely unpersuasive, even if

considered on its merits rather than deemed waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (perfunctory and undeveloped arguments, and arguments unsupported by pertinent authority, are waived).

The same is true of Johnson's argument that the ALJ "did not properly address whether Mr. Johnson had limitations that prevented him from sustaining a 40-hour workweek." [DE 15 at 22.] Johnson merely generally asserts that "the weight of the evidence" suggested a need for a "sustainability" analysis, but cites no evidence in support of this contention, which I therefore reject as perfunctory and undeveloped.

**Identifying the Applicable Medical-Vocational Rule**

Finally, Johnson contends that when the ALJ considered Johnson's ability to perform work, the ALJ did not correctly identify the applicable "rule" or "grid" in the medical-vocational guidelines. [DE 15 at 22.] The ALJ concluded that Johnson's limitations impeded his ability to "perform all or substantially all of the requirements of" the category of "light work," but nonetheless determined based on the testimony of the vocational expert that Johnson is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [AR at 34, 35.]

Johnson now suggests that the ALJ should have given additional consideration to whether his "exertional capacity is so reduced from the regulatory definition that it supports a finding that there remains little more than the occupational base for the lower rule." [DE 15 at 23.] If this had resulted in an analysis of available "sedentary work" of which Johnson is capable, he would have been found disabled. [*Id*. at 24.]

13

This argument fundamentally depends on the assessment of Johnson's RFC. Because that determination will be revisited on remand, I need not proceed further with a ruling on the issue now raised.

**Conclusion**

An ALJ must build a logical bridge from the evidence to his conclusion. *Brown v. Colvin*, 845 F.3d at 251; *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). Because the ALJ's decision lacked a coherent explanation of the weight he afforded the medical opinions of a treating physician, a consultative examiner, and medical and psychological consultants, I can't affirm his assessment of Ricky Johnson's residual functional capacity. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) ("the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues"). Johnson has demonstrated that the ALJ's findings and conclusions about the severity of his impairments and his residual functional capacity are not supported by substantial evidence. Even using the applicable deferential standard of review, I conclude that the ALJ's determinations are not supported by relevant evidence such as a reasonable mind might accept as adequate to support his conclusions. *Moore*, 743 F.3d at 1120-21. The Commissioner's final decision denying Johnson's application for disability benefits will be reversed and remanded for further consideration.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Ricky A. Johnson's application for Social Security Disability benefits is REVERSED AND REMANDED for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against defendant.

**SO ORDERED**.

ENTERED: March 19, 2018.

                                            /s/ Philip P. Simon
                                          **PHILIP P. SIMON, JUDGE**